HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MYSPINE, PS,<br><br>       Plaintiff,<br><br>       v.<br><br>USAA CASUALTY INSURANCE COMPANY, et al.,<br><br>       Defendants. | CASE NO. C12-1973RAJ<br><br>ORDER |

## I.  INTRODUCTION

This matter comes before the court on a discovery motion from Plaintiff MySpine, PS, and a discovery motion from Defendants USAA Casualty Insurance Company and USAA General Indemnity Company (collectively "USAA").  The parties have also submitted a stipulated motion to seal.

For the reasons stated below, the court DENIES the motion to seal (Dkt. # 26) and directs the clerk to TERMINATE both parties' discovery motions (Dkt. ## 23, 35).  This order concludes with instructions for completing jurisdictional discovery and determining whether this action will be remanded to state court.

## II.  BACKGROUND & ANALYSIS

USAA removed this case from King County Superior Court on November 8, 2013. Nearly six months later, it is still not clear whether the court has subject matter jurisdiction, and there is no motion pending that would allow the court to decide.  During

ORDER – 1

that time, the parties have piled disputes upon disputes, none of which have been resolved in a way that has much promise of moving this case forward.

The case itself (as opposed to the parties' approach to resolving it) is straightforward.  MySpine contends that USAA, which issues car insurance policies to thousands of Washingtonians, fails to make full payments to medical providers who treat USAA insureds.  Most USAA insureds have personal injury protection ("PIP") coverage, which entitles them to reimbursement for medical expenses arising from car accidents.  According to MySpine, USAA uses one or more third parties to compile the prices providers charge for medical procedures, and USAA denies payment to providers serving USAA's PIP insureds to the extent that the amount billed for a procedure exceeds the 80th percentile of those prices.  USAA apparently uses the term "RF reduction" to describe this practice.  MySpine not only contends that it has been damaged by this practice, but that thousands of providers across Washington have been damaged as well.  It hopes to represent a class of all Washington health care providers who have been subject to a RF reduction since October 2008.

MySpine initially sued in King County Superior Court, raising a breach of contract claim and a claim invoking the Washington Consumer Protection Act ("CPA").  USAA removed the case, invoking the Class Action Fairness Act ("CAFA"), which, in relevant part, gives the federal district courts jurisdiction over some class actions with more than $5 million in controversy.  28 U.S.C. § 1332(d)(2).  To establish the amount in controversy, USAA relied on a three-page declaration from Joley Day-Mayfield, a USAA claims representative.  She contended that she had examined USAA's business records to conclude that the RF reductions in the putative class (increased to reflect the limited treble damages provision of the CPA) totaled about $2.6 million from October 2008 to October 2012.  Based on her estimate of the yearly RF reductions in 2011 and 2012, USAA estimates that RF reductions for each upcoming year (again accounting for

ORDER – 2

trebling) will be at least $840,000. From these numbers, along with estimates of likely attorney fees and the value of an injunction that MySpine seeks, USAA concluded that the amount in controversy exceeds $5 million.

MySpine believes otherwise. It thinks that USAA's damage estimates are inflated, and it sought discovery to prove as much. No one disputes that MySpine is entitled to conduct discovery to assess the amount in controversy.[1]

Initially, there was reason to believe the parties were cooperating to assess jurisdictional issues. Just a few days after USAA removed the case, the parties filed a stipulation relieving USAA of the obligation to respond to MySpine's complaint until after the court resolved a forthcoming motion to remand. The same stipulation permitted USAA to file a motion to dismiss, but relieved MySpine of the obligation to respond to it until the court ruled on a motion to remand. It appeared to the court that the parties had both recognized the importance of resolving any jurisdictional issues promptly.

The parties' cooperation appears to have ended not long after their November 2012 stipulation. Their efforts to agree on an informal exchange of information to assess the amount in controversy were unsuccessful. MySpine then propounded a set of discovery requests, to which USAA responded on January 8, 2013. USAA's responses consisted of tedious boilerplate objections. As nearly as the court can ascertain, the substantive portion of USAA's responses consisted of two documents. One was a spreadsheet, which USAA produced in electronic format, that Ms. Day-Mayfield used to make the calculations underlying her declaration supporting USAA's notice of removal.

---

[1] This jurisdictional conflict has repeated recently in a handful of similar putative class actions that various Washington insurers have removed to this District. Among them was another suit in which the same counsel representing MySpine sued USAA for another of USAA's allegedly unlawful PIP claim-adjustment practices. After permitting jurisdictional discovery, the Honorable James L. Robart remanded that case. No. C12-1072JLR, Dkt. # 53 (Dec. 10, 2012 order). Indeed, so far as the court is aware, every similar case that an insurer has removed here has resulted in a remand to state court. Although this case challenges different practices and different calculations than the case before Judge Robart, USAA believes that it is obligated to provide no more jurisdictional discovery than what Judge Robart ordered. The court disagrees.

ORDER – 3

1    Neither party has disclosed even an excerpt of the spreadsheet (which the court will refer
2    to as the "undisclosed spreadsheet"), so the court has no idea what is in it.  It apparently
3    contains at least 32,000 "lines" of data, and USAA apparently chose to redact the name
4    of every provider.  The court does not know, for example, whether the undisclosed
5    spreadsheet breaks down data on a claim-by-claim or provider-by-provider basis.

6        The other document USAA produced was a one-page table with a few dozen
7    "reason codes," along with a dollar amount attributable to each code.[2]  The sum of those
8    amounts is the amount of reductions between October 2008 and October 2012 (before
9    trebling) that Ms. Day-Mayfield cited in her declaration.

10       MySpine also deposed Ms. Day-Mayfield in January.  It propounded at least two
11   additional sets of written discovery requests, to which USAA responded in March.  With
12   a few unimportant exceptions, USAA relied again on boilerplate objections and a refusal
13   to produce any more evidence underlying its calculation of the amount in controversy.

14       This initial discovery did not satisfy MySpine.  It wanted, in essence, to check Ms.
15   Day-Mayfield's work.  It set out to obtain the raw data underlying the undisclosed
16   spreadsheet.  It sent discovery requests to USAA requesting the explanation of reduction
17   ("EOR") forms underlying each of the claims reflected in the spreadsheet.  It also sent
18   subpoenas to Auto Injury Solutions, the third-party entity that helps USAA assess its RF
19   reductions.  MySpine also subpoenaed Milliman, Inc., a third-party entity that provides
20   Auto Injury Solutions with the provider-pricing data underlying the RF reductions.

21       The court has no quarrel with MySpine's decision to make a deeper inquiry into
22   Ms. Day-Mayfield's calculations.  On the record before the court, any reasonable litigant
23   would want more than the cursory statements Ms. Day-Mayfield made in her declaration.

---

[2] It is this one-page table that is the subject of the parties' stipulated motion to seal.  Dkt. # 26.
The court's local rules establish the requirements for a motion to seal, stipulated or otherwise.
Local Rules W.D. Wash. LCR 7(g).  The parties have not attempted to comply with those
requirements, relying instead on the bare fact that USAA has deemed the document confidential.
The court's review of the document suggests no basis for keeping it under seal.

ORDER – 4

Whether the undisclosed spreadsheet provides sufficient detail, the court cannot say. The court concludes, based on the parties' statements about the undisclosed spreadsheet, that MySpine reasonably has insisted on discovery to verify the accuracy of the data therein.

What is unreasonable is MySpine's request for *all* of the data underlying Ms. Day-Mayfield's calculations. Those calculations cover four years, more than 1,000 providers, and, according to Ms. Day-Mayfield, at least 16,000 claims. She estimates that it would take between 1,300 and 4,000 hours to provide the data MySpine has requested. Even if she has overestimated the burden, the court has no difficulty concluding that the discovery MySpine has requested would impose an undue burden on USAA.

According to MySpine, it has attempted to narrow the scope of its requests, but USAA has steadfastly refused to provide *any* underlying data. The court declines to parse through the parties' accusations to determine who is more at fault in this process. The record suggests that both parties are being unreasonable.

MySpine, meanwhile, has apparently decided that despite its inability to make progress on jurisdictional issues, it will press ahead with merits discovery. It has served notices of deposition for two USAA claims representatives, and its more recent discovery requests to USAA as well as its subpoenas to Auto Injury Solutions and Milliman go beyond merely obtaining information necessary to assess the amount in controversy. USAA brought its discovery motion to stay all "non-jurisdictional" discovery.

In the ordinary case, the court discourages the demarcation of discovery into "jurisdictional discovery," "merits discovery," "class certification discovery," and the like. There are few ascertainable boundaries between these classifications, and many more vast gray areas. In this case, for example, MySpine's effort to obtain data underlying Ms. Day-Mayfield's declaration is plainly relevant to whether the court has jurisdiction, and it is plainly relevant to the putative class's ultimate damages. Rather than encourage the parties to argue over how to categorize discovery, the court prefers to

ORDER – 5

trust their counsel to make reasonable discovery accommodations in light of the status of litigation. Leading up to class certification, for example, it makes no sense to expend effort seeking information that is only relevant to damages. By the same token, however, if (for example) a litigant is deposing a witness with knowledge about both jurisdictional matters and the merits of the case, it may be more efficient for everyone to conduct a single deposition covering all of the witness's knowledge. Even in a case like this one, which may be destined for another court, there is typically no harm in conducting discovery that will be useful in whatever court the case ultimately lands. To summarize, the court in the ordinary case strongly prefers to allow counsel to make reasonable agreements among themselves to apportion discovery among various phases of a case.

This is no ordinary case. The parties have demonstrated that they are unable to resolve basic jurisdictional issues without court intervention, making the court wary to permit them to wade into other areas of discovery. Moreover, MySpine has extracted an agreement from USAA that makes it impossible for USAA to challenge this case on the merits (via a motion to dismiss) until the court resolves a motion to remand. It would be inequitable to allow MySpine free rein to conduct merits discovery while it prevents USAA from proceeding with its merits challenge. The court will accordingly not permit anyone to conduct discovery other than discovery necessary to determine if the court has subject matter jurisdiction.

### III.  ORDER

With an eye toward resolving subject matter jurisdiction as quickly as possible, the court orders as follows:

1) The parties shall immediately meet and confer for the purpose of agreeing on a sample of the claims underlying Ms. Day-Mayfield's calculations. That sample should be large enough to permit a reasonable assessment of her calculations, but not so large as to unduly burden USAA. If the undisclosed

ORDER – 6

spreadsheet is not sufficient to permit MySpine to select a sample, USAA must disclose additional information.

2) Once the parties have agreed on a sample, USAA shall produce EOR forms and any other data necessary to support the reductions USAA claimed. If data from either Milliman or Auto Injury Solutions is necessary in this regard, MySpine may request it.[3]

3) Rather than impose an arbitrary deadline for complying with the first two clauses of this order, the court targets June 6, 2013, as the deadline for MySpine to file a motion to remand. If it appears that MySpine cannot not comply with this deadline, it shall first discuss an extension with USAA. If the parties agree, they may present a stipulation to the court. If they do not, they may contact the court in accordance with clause 5, below. The court expects the parties to inform the court well in advance of June 6 if MySpine is unable to meet this deadline.

4) Unless the court orders otherwise, the parties shall conduct no discovery that is not strictly related to complying with the first two clauses of this order.

5) Other than MySpine's motion to remand, the parties may file no contested motions without leave of court. If the parties are unable to resolve a dispute, they shall jointly contact the court's clerk by telephone to describe the dispute. The court will then determine whether to resolve the dispute by teleconference or another expedited means. The court will issue monetary sanctions against any party who takes an unreasonable position in future disputes.

---

[3] By way of illustrative example only, the court offers the following hypothetical means of complying with the first two clauses of this order. MySpine might select a sample of 100 claims for which Ms. Day-Mayfield calculated reductions of $5,000. USAA (and perhaps third parties) would produce the records underlying those claims, including the EORs, from which MySpine could determine if Ms. Day-Mayfield's calculations are reliable. Assuming they select the sample properly, the results of the sample will suffice to assess the reliability of all of her calculations.

ORDER – 7

## IV. CONCLUSION

For the reasons stated above, the court DENIES the parties' motion to seal. Dkt. # 26. The clerk shall UNSEAL all portions of the document at docket number 24.

The court directs the clerk to TERMINATE the parties' discovery motions. Dkt. ## 23, 35.[4] The court would typically grant or deny those motions, but it does not wish to send the message that any party has "won," even in part. Six months of litigation has resulted in more than 50 pages of briefing on discovery motions and no progress in determining whether this court has subject matter jurisdiction. Nobody is winning.

DATED this 6th day of May, 2013.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

---

[4] USAA provided no courtesy copies of several submissions whose cumulative length exceeds 50 pages. This violates both the District's electronic filing procedures and this court's chambers procedures. West. Dist. Wash. Elec. Filing Procedures, § III.G (http://www.wawd.uscourts.gov/sites/wawd/files/ECFFilingProceduresAmended12.20.12.pdf); Chambers Procedures (http://www.wawd.uscourts.gov/sites/wawd/files/JonesGeneralMotionsPractice.pdf). The court will strike any future submission for which USAA fails to provide required courtesy copies.

ORDER – 8